UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

STANLEY GIOVANNI CONTRERAS
BLANCO,

                    Petitioner,

                                                    21-CV-172-LJV
          v.                                        DECISION & ORDER

MERRICK GARLAND,[1] et al.,

                    Respondents.[2]

_____

        Stanley Giovanni Contreras Blanco has been detained in the custody of the

United States Department of Homeland Security since July 24, 2020—just over a year.

See Docket Item 1 at ¶ 19; Docket Item 3-1 at ¶ 20.  On January 28, 2021, he filed a *pro*

*se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the validity

of his detention at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York.

Docket Item 1.  On March 29, 2021, the respondents answered the petition, Docket Item

3, and on April 7, 2021, Contreras Blanco replied, Docket Item 6.

_____

        [1] The caption has been updated under Federal Rule of Civil Procedure 25(d).
The Clerk of the Court shall substitute Merrick Garland for Jeffrey A. Rosen on the
docket.

        [2] In its memorandum of law, the government argues that the only proper
respondent in this matter is Jeffrey Searls "as he is the person with direct control over
the detention of [Contreras Blanco]."  Docket Item 4 at 21.  "Because resolution of who
is the proper respondent will not affect the disposition of this petition, the Court will not
address it further."  *Khemlal v. Shanahan*, 2014 WL 5020596, at *2 n.3 (S.D.N.Y. Oct. 8,
2014).  It is clear that, at the very least, Searls "has the *immediate custody* of the party
detained, with the power to produce the body of such party before the court or judge,
[so] that he may be liberated if no sufficient reason is shown to the contrary."  *Rumsfeld
v. Padilla*, 542 U.S. 426, 435 (2004) (emphasis in original) (quoting *Wales v. Whitney*,
114. U.S. 564, 574 (1885)).

For the reasons that follow, this Court grants Contreras Blanco's petition in part.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts, taken from the record, come largely from filings with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE").

Contreras Blanco is a native and citizen of El Salvador.  *See* Docket Item 3-1 at ¶ 11.  He was admitted to the United States as a lawful permanent resident on January 31, 2012.  *Id.* at ¶ 6.  On May 1, 2017, Contreras Blanco was convicted of attempted robbery in the first degree and sentenced to four years' imprisonment and three years' post-release parole supervision.  *Id.* at ¶ 7.

On August 30, 2017, ICE determined that Contreras Blanco was "subject to removal due to his criminal conviction."  *Id.* at ¶ 8.  So, on February 2, 2018, DHS issued a "Warrant for Arrest of Alien" and an immigration detainer, notifying Contreras Blanco that he would be detained pending removal proceedings.  *Id.* at ¶ 9; Docket Item 3-2 at 17, 19.  That same day, DHS issued a "Notice to Appear," charging that Contreras Blanco was subject to removal from the United States under various provisions of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101-1537. Docket Item 3-2 at 22-24.  More specifically, DHS charged that Contreras Blanco was subject to removal under section 237(a)(2)(A)(iii) because he had been convicted of "an aggravated felony constituting a crime of violence for which the term of imprisonment is at least one year[,] . . . an aggravated felony relating to a theft offense for which the term of imprisonment is at least one year[,] . . . [and] an aggravated felony relating to an attempt or conspiracy to commit an offense for which the term of imprisonment is at

least one year."  Docket Item 3-1 at ¶ 12; *see also* Docket Item 3-2 at 24.  Likewise, DHS charged that he was subject to removal under section 237(a)(2)(A)(i) for having been convicted of "a crime involving moral turpitude committed within five years after admission for which a sentence of one year or longer may be imposed."  Docket Item 3-1 at ¶ 12; *see also* Docket Item 3-2 at 24.

On February 28, 2019, an immigration judge ("IJ") ordered Contreras Blanco removed from the United States.  Docket Item 3-1 at ¶ 18; Docket Item 3-2 at 37.  A few weeks later, Contreras Blanco appealed the IJ's order of removal to the Board of Immigration Appeals ("BIA"), Docket Item 1 at ¶ 19, and on August 12, 2019, the BIA dismissed that appeal, Docket Item 3-2 at 51.  About a month later, Contreras Blanco filed a petition for review with the United States Court of Appeals for the Second Circuit, and on July 24, 2020, he filed a motion to stay his removal.  Docket Item 1 at ¶ 19; *Contreras Blanco v. Barr*, Case No. 19-2850 (2d Cir.).  That petition and motion are pending.

## DISCUSSION

### I.    HABEAS PETITION

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the laws or treaties of the United States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  The government maintains that Contreras Blanco is validly detained under "8 U.S.C. § 1231, as an alien with a final order of removal, or else as a criminal alien pursuant to 8 U.S.C. § 1226(c)."  Docket Item 3 at 1.

Contreras Blanco disagrees on three grounds.  First, he argues that his detention for more than six months pending removal proceedings violates the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).  Docket Item 1 at ¶¶ 2, 28, 37.  The Court construes Contreras Blanco's first claim as arguing that his continued detention violates 28 U.S.C. § 1231(a)(6) because there is "good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future."[3] *See Zadvydas*, 533 U.S. at 701.  Second, he argues that his detention violates the Due Process Clause of the Fifth Amendment of the United States Constitution.  Docket Item 1 at ¶ 44.  The Court construes this claim as arguing that Contreras Blanco's detention violates his rights to both substantive and procedural due process.  And third, he argues that his detention violates the Excessive Bail Clause of the Eighth Amendment.  *Id.* at ¶ 48.

## II.   STATUTORY CHALLENGE

This Court begins by considering the statutory basis for Contreras Blanco's detention in order to evaluate his first challenge, alleging that his continued detention violates 8 U.S.C. § 1231 as interpreted by the Supreme Court in *Zadvydas*, 533 U.S. at 701.  The government contends that Contreras Blanco's detention is governed by 8 U.S.C. § 1231(a) because Contreras Blanco's "order of removal became administratively final upon dismissal of his appeal by the BIA."  *See* Docket Item 4 at 8.  By virtue of his argument that his detention violates *Zadvydas*, *see* Docket Item 1 at

---

[3] Because Contreras Blanco is proceeding *pro se*, this Court holds his submissions "to less stringent standards than formal pleadings drafted by lawyers."  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).

¶ 26, Contreras Blanco apparently agrees.  But this Court disagrees and finds that Contreras Blanco's detention is governed by 8 U.S.C. § 1226(c).

"Broadly speaking, section 1226 governs the detention of immigrants who are not immediately deportable."  *Hechavarria v. Sessions*, 891 F.3d 49, 57 (2d Cir. 2018). Section 1231, on the other hand, "addresses the 'removal period' for immigrants facing deportation."  *Id.* at 53.  "[T]he 'removal period' [is] term used in the statute to describe the 90-day period following an order of removal during which 'the Attorney General shall remove the [noncitizen].'"  *Id.* at 54 (quoting 8 U.S.C. § 1231(a)(1)(A)). The statute explicitly defines the beginning of the removal period as occurring "on the latest of the following":

> (i) The date the order of removal becomes administratively final.

> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*Id.* at 54-55 (quoting 8 U.S.C. § 1231(a)(1)(B)).

Contreras Blanco has filed a petition for review of the BIA's decision and a motion to stay his removal with the Second Circuit.  *See Contreras Blanco*, Case No. 19-2850.  Under DHS's forbearance agreement with the Second Circuit, "DHS will not remove a[ noncitizen] who has requested a stay of removal with a petition for review of an immigration order of removal unless a government motion opposing the stay is granted by the court or the [noncitizen's] stay motion is otherwise denied."  *Sankara v. Whitaker*, 2019 WL 266462, at *4 (W.D.N.Y. Jan. 18, 2019).  This Court accordingly has held that until a Second Circuit panel rules on the request for a stay of removal, the "forbearance agreement amounts to a court ordered stay of the removal of the

[noncitizen]" for the purposes of the statute.  *See Hemans v. Searls*, 2019 WL 955353, at \*3 (W.D.N.Y. Feb. 27, 2019); *Sankara*, 2019 WL 266462, at \*4; *see also Hereda v. Shanahan*, 245 F. Supp. 3d 521, 524 (S.D.N.Y. 2017) (vacated on appeal as moot) (and cases cited therein).

Therefore, even if the respondents are correct that Contreras Blanco previously was detained under section 1231(a), he now is detained under section 1226(c).[4] Because Contreras Blanco is not detained under section 1231(a), this Court rejects his argument that his detention violates that provision as interpreted by the Supreme Court in *Zadvydas*.

## III.   DUE PROCESS

Contreras Blanco also alleges that his continued detention violates the Due Process Clause.  *See* Docket Item 1 at ¶ 44.  The Fifth Amendment's Due Process Clause forbids the federal government from depriving any "person . . . of . . . liberty . . . without due process of law."  U.S. Const. amend. V.  The Supreme Court "has held that the Due Process Clause protects individuals against two types of government action." *United States v. Salerno*, 481 U.S. 739, 746 (1987).  "So-called 'substantive due process' prevents the government from engaging in conduct that shocks the conscience . . . or interferes with rights implicit in the concept of ordered liberty."  *Id.* (citations omitted).  "When government action depriving a person of life, liberty, or property

---

[4] The government asserts that if Contreras Blanco is not held under 8 U.S.C. § 1231(a), he is held under section 1226(c) because of his criminal history.  *See* Docket Item 3 at 1.  For purposes of this decision and order, this Court agrees that the respondents are holding Contreras Blanco under section 1226(c).

survives substantive due process scrutiny, it must still be implemented in a fair manner." *Id.*  "This requirement has traditionally been referred to as 'procedural' due process."  *Id.*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690.  "[G]overnment detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections . . . or, in certain special and narrow nonpunitive circumstances, . . . where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint."  *Id.* (emphasis in original) (citations omitted).  Other than those unique, special, and narrow circumstances, "[o]nly a jury, acting on proof beyond a reasonable doubt, may take a person's liberty.  That promise stands as one of the Constitution's most vital protections against arbitrary government."  *United States v. Haymond*, 139 S. Ct. 2369, 2373 (2019).

"[Noncitizens], even [noncitizens] whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth . . . Amendment[]."  *Plyer v. Doe*, 457 U.S. 202, 210 (1982); *see also Shaughnessey v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1954) ("It is true that [noncitizens] who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.").  At the same time, Congress has "broad power over naturalization and immigration, [permitting it to] make[] rules that would be unacceptable if applied to

citizens." *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)).

### A.   Substantive Due Process

The Court construes Contreras Blanco's petition as arguing that his detention violates his right to substantive due process.  Contreras Blanco has been in DHS custody since July 24, 2020, just over a year.  Docket Item 3-1 at ¶ 20.  But this Court cannot say that detention that long violates substantive due process.  *See Sanusi v. I.N.S.*, 100 F. App'x 49, 51 (2d Cir. 2004) (summary order) (determining that six-year detention did not violate due process).  Indeed, detention under section 1226 may serve the government's compelling interests in both "preser[ving] the government's ability to later carry out its broader responsibilities over immigration matters," *Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991), and preventing crime by arrestees who pose a danger to the safety of the community, *see Salerno*, 481 U.S. at 749.  Although there comes a time when the length of a noncitizen's detention pending removal violates due process regardless of the procedural protections afforded, *see Salerno*, 481 U.S. at 747 n.4, that time has not yet come here.

### B.   Procedural Due Process

Contreras Blanco also challenges the procedural safeguards that apply to his continued detention.  Docket Item 1 at ¶ 33.  The Due Process Clause is not offended by the mandatory detention of noncitizens for the "*brief period necessary* for their removal proceedings," *Demore*, 538 U.S. at 513 (emphasis added), but may be violated by detention beyond that "brief" period, depending on the balance of the individual's and the government's interests, *see, e.g.*, *id.* at 532 (Kennedy, J., concurring) ("[A] lawful

permanent resident . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention bec[omes] unreasonable or unjustified."); *see also Landon v. Plasencia*, 459 U.S. 21, 34 (1982) ("The constitutional sufficiency of procedures provided in any situation, of course, varies with the circumstances.").

For that reason, this Court "has evaluated procedural due process challenges to immigration detention with a two-step inquiry." *Hemans*, 2019 WL 955353, at *5. "A[t] the first step, the Court considers whether the [noncitizen's] detention has been unreasonably prolonged." *Id.* "If it has not, then there is no procedural due process violation." *Id.* "But if it has, the Court proceeds to step two and 'identifies the specific dictates of due process' by considering the *Mathews v. Eldridge* factors." *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). "If the government has not provided the procedural safeguards dictated by the *Mathews* factors to a [noncitizen] subject to unreasonably prolonged detention, then his continued detention violates procedural due process." *Id.*

### 1. Contreras Blanco's Detention

"[W]hen weighing the lawfulness of continued detention of a [noncitizen] under the Due Process Clause," several factors determine whether detention is unreasonably prolonged. *Jamal A. v. Whitaker*, 2019 WL 549722, at *3 (D. Minn. Jan. 22, 2019). This Court, for example, has considered "(1) the total length of detention to date; (2) the conditions of detention; (3) delays in the removal proceedings caused by the parties; and (4) the likelihood that the removal proceedings will result in a final order of removal." *Hemans*, 2019 WL 955353, at *6.

First, and most important, courts consider the length of detention.  Contreras Blanco has been in DHS custody since July 24, 2020—about a year.  *See* Docket Item 3-1 at ¶ 20.  "As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing."  *Muse v. Sessions*, 2018 WL 4466052, at *4 (D. Minn. Sept. 18, 2018) (and cases cited therein).  In fact, courts have found detention even shorter than a year to be unreasonably prolonged as part of a procedural due process analysis.[5]

In *Demore*, the Supreme Court upheld the constitutionality of section 1226(c), relying on the "very limited time of . . . detention at stake" and noting that "in the majority of cases[, section 1226(c) detention] lasts less than the 90 days . . . considered presumptively valid in *Zadvydas*."  *Demore*, 538 U.S. at 529 & n.12; *see also id.* ("[I]n 85% of the cases in which [noncitizens] are detained pursuant to [section] 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days.  In the remaining 15% of cases, in which the [noncitizen] appeals the decision of

---

[5] *See, e.g.*, *Sophia v. Decker*, 2020 WL 764279, at *4 (S.D.N.Y. Feb 14, 2020) (approximately seven months);  *Vargas v. Beth*, 2019 WL 1320330, at *8 (E.D. Wis. Mar. 22, 2019) (approximately nine-and-a-half months); *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) (more than seven months and more than nine months by the next removal-related hearing); *Hernandez v. Decker*, 2018 WL 3579108, at *1, *12 (S.D.N.Y. July 25, 2018) (nine months); *Sajous v. Decker*, 2018 WL 2357266, at *1, *12 (S.D.N.Y. May 23, 2018) (more than eight months); *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 720 (D. Md. 2016) (more than ten months); *see also Sopo v. U.S. Attorney General*, 825 F.3d 1199, 1218 (11th Cir. 2016) ("[A] criminal [noncitizen's] detention without a bond hearing may often become unreasonable by the one-year mark, depending on the facts of the case.").  *But cf. Minaya-Rodriguez v. Barr*, 459 F. Supp. 3d 488, 497 (W.D.N.Y. 2020) (noting that the "procedural due process claims by petitioners detained for 6 to approximately 12 twelve months while awaiting final orders in their immigration proceedings generally do not succeed—unless the government caused extreme delay or engaged in dilatory conduct").

the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter." (citations omitted)).

Contreras Blanco's twelve-month detention is triple the four-month average cited in *Demore*. The length of Contreras Blanco's detention therefore supports his argument that his detention without an individualized bond hearing has been unreasonably prolonged.

Second, courts consider the conditions of detention. Whether "the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention" factors into the reasonableness of Contreras Blanco's detention. *See Sajous v. Decker*, 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018). "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Muse*, 2018 WL 4466052, at *5.

The government has submitted the declaration of a BFDF employee regarding the conditions of Contreras Blanco's detention. *See* Docket Item 3-3. In that declaration, the government avers that the facility is unlike a prison because "most persons . . are not locked in a cell," *id.* at ¶ 8; they "do not face the same level of restrictions typical for someone held at a prison," *id.* at ¶ 7; and they "ordinarily may move throughout the BFDF without being required to wear handcuffs or legcuffs," *id.* at ¶ 11. "Six of the dorm units are open-dorm style," but three others—for detainees with criminal histories or female detainees—have cell doors that close at night. *Id.* at ¶ 8.[6]

---

[6] The declaration includes two paragraphs numbered "8." This citation is to the first of those paragraphs.

And "persons held at BFDF [are] required to wear [] restraints [] when being booked in or booked out" or when they are "facing discipline [and are] brought to the Special Housing Unit ('SHU')."  *Id.* at ¶ 11.

In contrast, Contreras Blanco asserts that he is "in lock down for about eighteen hours daily" and that his privacy is often compromised; for example, there must be "another man in the same cell" when he uses the restroom.  Docket Item 6 at 6.  In fact, Contreras Blanco says that his current detention is worse than his New York State incarceration—specifically, that it is "meaningfully different and stressful" in comparison. *Id.*

Because of the cells, restraints, and discipline in the SHU, conditions at BFDF certainly "resemble penal confinement" for at least some persons detained there.  *See Muse*, 2018 WL 4466052, at *5.  Moreover, this Court has previously found that conditions at BFDF are akin to prison conditions, especially for detainees such as Contreras Blanco who have criminal records.  *See Barrie v. Barr*, 2020 WL 1877706, at *5 (W.D.N.Y. Apr. 15, 2020).  This factor therefore weighs in Contreras Blanco's favor as well.

Third, courts consider whether the detainee has prolonged his own detention. The Second Circuit has found that this factor weighs against finding detention unreasonable when a noncitizen has "substantially prolonged his stay by abusing the processes provided to him" but not when "an immigrant . . . [has] simply made use of the statutorily permitted appeals process."  *Hechavarria*, 891 F.3d at 56 n.6 (first quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)).  As the Sixth Circuit has noted, "appeals and petitions for relief are to be expected as a natural part of the process.  A

12

[noncitizen] who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him." *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003) (cited in *Hechavarria*, 891 F.3d at 56 n.6). Indeed,

> although a [noncitizen] may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take. The mere fact that a [noncitizen] has sought relief from deportation does not authorize the [government] to drag its heels indefinitely in making a decision. The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonability.

*Id.*

The respondents argue that Contreras Blanco is responsible for the delay here. *See* Docket Item 4 at 12. This Court disagrees.

While incarcerated on criminal charges—that is, before he was at the BFDF in immigration custody—Contreras Blanco learned that his removal proceedings were scheduled for May 21, 2018. Docket Item 3-1 at ¶ 14. At a hearing on that date, Contreras Blanco requested and was granted an adjournment to retain counsel. *Id.* Contreras Blanco appeared with his attorney for his immigration hearing on July 23, 2018, *id.* at ¶ 15, and his attorney requested and was granted a second adjournment to file a "Form I-589, Application for Asylum and Withholding of Removal," *id.* Finally, after Contreras Blanco's attorney requested and was granted several additional adjournments, on February 28, 2019, the IJ denied Contreras Blanco's application for relief and ordered him removed from the United States. *Id.* at ¶ 18. Contreras Blanco appealed the order of removal to the BIA, *id.* at ¶ 19, and then sought review by the Second Circuit, Docket Item 3 at ¶ 16; *Contreras Blanco*, Case No. 19-2850.

All that occurred before Contreras Blanco entered ICE custody on July 24, 2020, when he completed serving his criminal sentence.  Docket Item 3-1 at ¶ 20.  And it was not until October 18, 2020, that ICE reviewed his custody status and notified Contreras Blanco that he would remain detained.  *Id.* at ¶ 22; Docket Item 3-2 at 59-62.

This Court does not agree with the respondents that Contreras Blanco's ICE detention has been delayed because of his own actions.  In fact, any delay in his immigration proceedings occurred well before Contreras Blanco even was detained in ICE custody at BFDF.  The government does not seem to disagree with that observation, noting that "there have been no delays by either party since [Contreras Blanco] has come into ICE custody."  *See* Docket Item 4 at 40.  So, as a matter of simple logic, Contreras Blanco could not have prolonged his immigration detention by actions taken before it even began.

Moreover, any delay in the process prior to Contreras Blanco's ICE detention resulted from his attorney's requests for adjournments, not dilatory tactics by him.  As this Court has noted, such requests by counsel should not prejudice counsel's client.  *See Rosales Rosales v. Searls*, 2021 WL 1966774, at *5 (W.D.N.Y. May 17, 2021).

Thus, Contreras Blanco "simply made use of the statutorily permitted appeals process" and did not "abus[e] the processes provided to him."  *See Hechavarria*, 891 F.3d at 56 n.6 (quoting *Nken*, 556 U.S. at 436).  And because Contreras Blanco has not prolonged his detention, this factor does not weigh against him.

Finally, courts consider the likelihood that the removal proceedings will result in a final order of removal.  But this Court declines to weigh the merits of Contreras Blanco's claims, which are pending before the Second Circuit.

After balancing all these factors, this Court finds that Contreras Blanco's detention has been unreasonably prolonged.  Therefore, this Court turns to the second step of the two-part inquiry to determine what remedy his unreasonably-prolonged detention demands.

### 2.    The Process Due to Contreras Blanco

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors," *id.* at 335, namely:  "(A) the private interest affected; (B) the risk of erroneous deprivation of that interest through the procedures used; and (C) the governmental interest at stake," *Nelson v. Colorado*, 137 S. Ct. 1249, 1255 (2017).  Here, that analysis leads to the conclusion that Contreras Blanco's continued detention without an individualized hearing, at which the government must justify his continued detention by clear and convincing evidence, fails to "comport with the 'fundamental fairness' demanded by the Due Process Clause."  *See Schall v. Martin*, 467 U.S. 253, 263 (1984).

Contreras Blanco's interest in his freedom pending the conclusion of his removal proceedings deserves great "weight and gravity."  *See Addington v. Texas*, 441 U.S. 418, 427 (1979).  He has an obvious interest in his "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint."  *Zadvydas*, 533 U.S. at 690.  Moreover, while "[t]he private interest here is not liberty in the abstract, but liberty *in the United States*," *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) (emphasis in original), Contreras Blanco has not conceded his deportability, and the

resolution of that issue remains pending before the Second Circuit.  In fact, his interest in liberty *in the United States* must indeed be strong for him to subject himself to unreasonably-prolonged detention while contesting his deportability.  *See Fremont v. Barr*, 2019 WL 1471006, at *6 n.7 (W.D.N.Y. Apr. 3, 2019).

And there appears to be good reason for that strong interest.  Contreras Blanco claims that his mother and stepfather are United States citizens and that he has one sister with asylum status here.  *See* Docket Item 6 at 2.  These family members live not in El Salvador, where the government wishes to send him, but in the United States, where Contreras Blanco himself has lived for almost a decade.  *See id.*  Thus, if Contreras Blanco chose not to challenge his removal, he would "lose the right to rejoin [his] immediate family, a right that ranks high among the interests of the individual." *See Landon*, 459 U.S. at 34.

This Court recognizes that the government's interest in detaining Contreras Blanco also may be strong.  Indeed, Contreras Blanco is detained under 8 U.S.C. § 1226(c), which applies to noncitizens who fall "into one of several enumerated categories involving criminal offenses and terrorist activities."  *Jennings*, 138 S. Ct. at 837.  "[Noncitizens] detained under [that] authority are not entitled to be released under any circumstances other than those expressly recognized by the statute."[7]  *Id.* at 846. Thus, in mandating the detention of criminal noncitizens, the statute reflects a congressional purpose of reducing the risk of flight and danger to the community.  *See Demore*, 538 U.S. at 518-19 (explaining that Congress found that "deportable criminal

---

[7] The exception from mandatory detention is a "limited authorization for release for witness-protection purposes," *Jennings*, 138 S. Ct. at 846, and is not applicable here.

[noncitizens] who remained in the United States often committed more crimes before being removed" and that "20% of deportable criminal [noncitizens] failed to appear for their removal hearings").[8]  "The government's interest in preventing crime by arrestees is both legitimate and compelling."  *Salerno*, 481 U.S. at 749.  And general concerns about the risk of flight highlight the government's compelling interest in preserving its "ability to later carry out its broader responsibilities over immigration matters."  *Doherty*, 943 F.2d at 211.

### 3.    The Procedures Used Thus Far

A few months after Contreras Blanco was taken into DHS custody, he received an individualized custody determination under 8 C.F.R. § 241.4.  *See* Docket Item 3-2 at 58-62.  In that proceeding, Contreras Blanco bore the burden of "demonstrating by 'clear and convincing' evidence that [he] w[ould] not pose a danger to the community and w[ould] not be a significant flight risk."  *Id.* at 58.  The determination that Contreras Blanco did not meet his burden was made by a DHS official rather than by a neutral decisionmaker such as an IJ.  *See id.* at 62.  Moreover, Contreras Blanco now is held under section 1226(c), which prohibits the government from offering a detainee the opportunity to challenge whether he is, in fact, a danger or a flight risk.  *See Jennings*, 138 S. Ct. at 846.

---

[8] The Court noted that this number included noncitizens who were released from custody *without* an individualized bond hearing.  *Demore*, 538 U.S. at 519 n.4 ("Although the Attorney General had the authority to release these [noncitizens] on bond, it is not clear that *all* of the [noncitizens] released were in fact given individualized bond hearings." (emphasis in original)).

This Court concludes that in light of the procedures used thus far, there is a significant risk that Contreras Blanco is being erroneously deprived of his liberty interests.  Now that his detention has become unreasonably prolonged, due process requires *some* opportunity to be heard "at a meaningful time and in a meaningful manner."  *Armstrong*, 380 U.S. at 552.

An opportunity to be heard in a meaningful manner necessarily requires a hearing that "satisfies the constitutional minimum of fundamental fairness."  *Santosky v. Kramer*, 455 U.S. 745, 756 n.8 (1982) (citation omitted).  When the government seeks the civil detention of a person to effect a compelling regulatory purpose, it must show by clear and convincing evidence that such detention is necessary to serve that compelling interest.  *See Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992); *Addington*, 441 U.S. at 432-33; *see also Santosky*, 455 U.S. at 756 (explaining that the "clear and convincing evidence" standard applies "when the individual interests at stake in a . . . proceeding are both 'particularly important' and 'more substantial than mere loss of money'" (quoting *Addington*, 441 U.S. at 424)).  That standard applies equally here.

To sustain the prolonged detention of a noncitizen subject to removal proceedings based on its general interests in immigration detention, the "[g]overnment [is] required, in a 'full-blown adversary hearing,' to convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person," *Foucha*, 504 U.S. at 81 (quoting *Salerno*, 481 U.S. at 751), or that the noncitizen will appear for any future proceeding.[9]  This requires

---

[9] As this Court explained in *Hemans*, 2019 WL 955353, at *8 n.7, a pretrial detainee's right to a speedy trial distinguishes the interests supporting the evidentiary

consideration of less-restrictive alternatives to detention.  *See id.*; *cf. United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000) ("When a plausible, less restrictive alternative is offered to a" regulation burdening a constitutional right, "it is the Government's obligation to prove that the alternative will be ineffective to achieve its goals.").

### C.    Conclusion

Contreras Blanco's section 1226(c) detention has been unreasonably prolonged. Because section 1226(c) does not require—indeed, does not permit—an individualized hearing in which the government must demonstrate by clear and convincing evidence that no conditions of release can reasonably serve the government's compelling regulatory interests in detaining him, it is unconstitutional as applied to him.  As such, his continued detention violates the Due Process Clause.

Contreras Blanco must be released unless, no later than **14 calendar days from the date of this decision and order**, the government demonstrates by clear and convincing evidence before a neutral decisionmaker that Contreras Blanco's continued detention is necessary to serve a compelling regulatory purpose—such as preventing flight or protecting others or the community.  The decisionmaker also must consider— and must address in any decision—whether there is clear and convincing evidence that there are no less-restrictive alternatives to physical detention, including release on bond in an amount the petitioner can reasonably afford, with or without conditions, that also would reasonably address those same regulatory purposes.

---

standard traditionally applicable to flight-risk determinations for pretrial detention purposes from what is required after an unreasonably-prolonged immigration detention.

IV.   **EXCESSIVE BAIL CLAUSE**

Contreras Blanco also argues that the "government's categorical denial of bail to certain noncitizens violates the right to bail encompassed by the Eighth Amendment." Docket Item 1 at ¶ 49.  The Excessive Bail Clause requires "that the Government's proposed conditions of release or detention not be 'excessive' in light of the perceived evil." *Salerno*, 481 U.S. at 754.  Although detention of criminal noncitizens during removal proceedings for only a brief period without individualized findings after a hearing is not "excessive in relation to the valid interests the government seeks to achieve," *Sankara v. Barr*, 2019 WL 1922069, at *9 (W.D.N.Y. Apr. 30, 2019) (quoting *Galen v. Cty of Los Angeles*, 477 F.3d 652, 660 (9th Cir. 2007)); *see Demore*, 538 U.S. at 519-21 (explaining Congress's interests in brief mandatory § 1226(c) detention), the same cannot necessarily be said "after unusual delay in deportation hearings," *Carlson v. Landon*, 342 U.S. 524, 546 (1952).  But because this Court has determined that due process requires that Contreras Blanco receive an individualized hearing, his claim that the Excessive Bail Clause requires the same result is moot.

<u>**ORDER**</u>

In light of the above, IT IS HEREBY

ORDERED that **within 14 calendar days of the date of this decision and order**, the government must release Contreras Blanco from detention unless a neutral decisionmaker conducts an individualized hearing to determine whether his continued detention is justified; and it is further

ORDERED that at any such hearing, the government has the burden of demonstrating by clear and convincing evidence that Contreras Blanco's continued

detention is necessary to serve a compelling regulatory purpose, such as minimizing

risk of flight or danger to the community.  Whether detention is necessary to serve a

compelling regulatory purpose requires consideration of whether a less-restrictive

alternative to detention would also address the government's interests.  In other words,

the decisionmaker must find that no condition or combination of conditions of release

can reasonably ensure Contreras Blanco's appearance and the safety of the

community—that is, even with conditions, Contreras Blanco presents an identified and

articulable risk of flight or a threat to an individual or the community; and it is further

ORDERED that **within 30 days of the date of this decision and order,** the

government shall file an affidavit certifying compliance with this order.  That affidavit

should include a copy of the bond hearing order.


SO ORDERED.

Dated:      July 28, 2021
            Buffalo, New York


             */s/ Lawrence J. Vilardo*
            LAWRENCE J. VILARDO
            UNITED STATES DISTRICT JUDGE